**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JILL A. SNOW,

        Plaintiff,

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
_____/

No. C-06-5054 EDL

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
OR REMAND AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

On May 10, 2004, Plaintiff Jill A. Snow ("Plaintiff") filed for disability benefits with a

protective filing date of April 26, 2004. (AR 50-54.)  She alleged inability to work since August 8,

2002, due to musculoskeletal impairments. (AR 50.)  At initial review, the SSA denied Plaintiff's

claim for permanent disability on June 23, 2004, and again denied reconsideration on September 28,

2004.  Plaintiff filed a timely request for hearing on November 5, 2004 (AR 26, 32, 39), and

received an administrative hearing on October 11, 2005. (AR 44, 257.)

The Administrative Law Judge ("ALJ") issued a partially unfavorable decision on April 7,

2006. (AR 14-19.)  The ALJ found that Plaintiff was disabled for a closed period from August 8,

2002 to February 1, 2005. (AR 14.)   The ALJ concluded that after February 1, 2005, Plaintiff

improved medically and gained sufficient residual functional capacity ("RFC") to perform

sedentary-level work. (AR 19.)  The ALJ found Plaintiff able to lift/carry up to 10 pounds, with no

repetitive bending and twisting, and to stand at will for 10 to 15 minutes on an as needed basis. (AR

**United States District Court**
For the Northern District of California

1    18.) Accordingly, Plaintiff could return to past vocationally relevant work. (AR 19.) The SSA

2    Appeals Council denied Plaintiff's request for review on July 13, 2006. (AR 5-7.)

3         On August 22, 2006, Plaintiff brought this action pursuant to 42 U.S.C. Section 405(g) seeking

4    judicial review of the final decision denying her continuing disability benefits beyond the closed

5    period. (Pl.'s Compl. ¶ 7.) Plaintiff claims <u>permanent</u> disability due to severe back pain and

6    spasms. (Pl.'s Compl. ¶ 6.) She argues that the ALJ's findings were unsupported by substantial

7    evidence and contained errors of law. (Pl.'s Compl. ¶¶ 6, 7.) The matter is now fully briefed.

8    **II.    STANDARD OF REVIEW**

9         The district court reviews findings of fact to determine whether they are supported by

10   substantial evidence in the whole record and not based on legal error. 42 U.S.C. § 405(g);

11   <u>Desrosiers v. Secretary of H.H.S.</u>, 840 F.2d 573, 575-76 (9th Cir. 1988). A proposition supported by

12   substantial evidence is one that a reasonable mind might accept as adequate to support a conclusion.

13   <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997); <u>see also</u> <u>Jamerson v. Chater</u>, 112 F.3d 1064,

14   1066 (9th Cir. 1997) ("Substantial evidence is more than a scintilla, but less than a preponderance").

15   "A decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it

16   is based on legal error." <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, if the

17   evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court

18   may not substitute its judgment for that of the Secretary. <u>Flaten v. Secretary of Health and Human</u>

19   <u>Serv.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). If the district court is to base its remand on the basis of

20   evidence not before the ALJ, the plaintiff must show good cause for the delay, and materiality. 42

21   U.S.C. § 405(g); <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001).

22   **III.   SUMMARY OF EVIDENCE BEFORE ALJ**

23        **A.  Plaintiff's Testimony**

24        Plaintiff was born on July 25, 1962 and is now 44 years old. (AR 15.) She has a GED, or the

25   equivalent of a high school education. (AR 15.) Her work history includes employment as a payroll

26   clerk (started sometime between 1985 to 1986, ending in the early 1990s), delivery person (1997 to

27   1998), grocery clerk (1998 to 2000), and chef (2002). (AR 15, 262-263.) Plaintiff's records showed

28   that she had prior surgery on her wrist. (AR 90.) She testified that Dr. Finnesey or Dr. Davis may

**United States District Court**
For the Northern District of California

1   have diagnosed her with arthritis.  (AR 272.)  The injury to her lower back that caused her disability

2   occurred on August 8, 2002 while Plaintiff was lifting a table during work as a chef.  (AR 15.)  After

3   she moved the table, she "heard a pop."  (AR 263.)  Since then, she engaged in several unsuccessful

4   work attempts, and has not performed any sustained substantial gainful activity.  (AR 15, 264.)

5   Additionally, Plaintiff testified that she shrunk one and a half inches in height due to this injury.

6   (AR 275.)

7        Plaintiff testified that she has not seen a doctor for more than a year because of problems in

8   obtaining authorization from the State Fund and finding a doctor.  (AR 265.)  She took Tylenol for

9   her pain because she ran out of medications after not being able to see a new doctor for a

10  prescription.  (AR 270.)  Plaintiff also testified to pain in her lower back, sometimes traveling down

11  to her legs, and in her left hip while in bed.  (AR 270.)  She visited the emergency room several

12  times in the summer of 2004.  (AR 269.)  Her back was "locked up" and she was having severe pain

13  for two or three days.  Id.  She could not recall what triggered the pain, but almost "anything can

14  aggravate it."  Id.  Plaintiff also testified that "[she] can't do any one thing for a long period of time

15  because it will aggravate."  (AR 272.)

16      On a typical day, Plaintiff gets dressed and takes her puppy for a 10 minute stroll around the

17  perimeter of her apartment.  (AR 265-266.)  She wears a back brace.  (AR 273.)  She drives to the

18  grocery store across the block on a daily basis because she cannot walk far.  (AR 266.)  She watches

19  television occasionally, but only for short period of time because she cannot sit for a long time.  (AR

20  272).  Plaintiff lives with a friend and takes care of her own room, including cleaning, laundry,

21  dusting, vacuuming and other household errands.  (AR 268.)

22       On a good day, she can sit comfortably for about half an hour, stand for ten or fifteen minutes,

23  and walk for fifteen minutes.  (AR 268.)  She can lift about half a gallon of milk.  Id.  She can drive

24  comfortably for half an hour.  (AR 275.)  However, spasms occur randomly, and she needs to lie

25  down for about an hour to recover from the pain.  (AR 267.)  Typically, Plaintiff needs to lie down at

26  least a couple times a day.  Id.  She has about two to three good days and four bad days a week.  (AR

27  268.)  She testified to having very limited movements and disrupted sleep.  (AR 269.)

28       Plaintiff testified that she was offered work in June 2003 as an office assistant at the Holiday

United States District Court
For the Northern District of California

1   Inn.  (AR 274.)  She was required by Worker's Compensation to try performing this job.  (AR 167,

2   274.)  Duties included data entry, copying, filing, phone work, and handling the register.  (AR 274.)

3   Plaintiff testified that she was unable to continue working because it required twisting and bending.

4   She became uncomfortable and had to leave early because of the pain.  Id.

5           Since her last visit to a doctor, Plaintiff testified that she believes her condition has worsened.

6   (AR 275.)  She experiences pain in her mid-back and below the shoulder blades due to her hip pain.

7   Id.  That area seizes at times, and "it pops" when she bends forward.  Id.  Plaintiff had been

8   attending physical therapy for six months as of the hearing date.  (AR 276.)

9           Responding to the ALJ, Plaintiff testified that she could not return to her past employment as a

10  payroll clerk because it involves long periods of sitting and occasional bending.  (AR 276.)  For the

11  same reasons that she could not perform the office assistant duties at Holiday Inn, which were part-

12  time and sedentary, Plaintiff testified that she is unable to work as a payroll clerk.  Id.

13          **B.  Medical Evidence**

14              **1.  Dr. Arakaki**

15          Dr. Sue K. Arakaki, M.D. first examined Plaintiff on August 19, 2002 and found Plaintiff

16  unable to work.  (AR 15.)  On August 22, 2002, Plaintiff was released to limited work, lifting no

17  more than 15 pounds.  Id.  Dr. Arakaki referred Plaintiff for Magnetic Resonance Imaging ("MRI").

18  (AR 88.)  A September 24, 2002 MRI of Plaintiff's lumbar spine revealed that there was disc

19  desiccation at the L3-4, L4-5 and L5-S1 disc levels with moderate decrease in disc height at L5-S1.

20  Id.  There was also "mild diffuse spurring at disc margins from L2-3 through L5-S1 and also about

21  disc margins at T11-12."  Id.  "Mild facet hypertrophy and ligamentum flavum thickening are also

22  present from L2-3 through L5-S1."  Id.  A small diffuse disc bulge was present at the T11-12 level

23  and also at L3-4, L4-5 and L5-S1 levels.  (AR 89.)  There was no evidence of frank transligamentous

24  disc herniation or marked lateral recess narrowing.  Id.  The disc and degenerative change

25  contributed to borderline bilateral foraminal narrowing at L3-4, L4-5, and L5-S1 levels.  Id.  Dr.

26  Arakaki later referred Plaintiff to Dr. Davis.  (AR 181.)

27              **2.  Dr. Davis**

28          Dr. David Davis, M.D. first examined Plaintiff on December 11, 2002.  (AR 15, 181.)  Dr.

4

United States District Court

For the Northern District of California

Davis observed that Plaintiff's symptom of increased pain when she is standing or lying flat is consistent with lumbar facet syndrome. (AR 182.) On January 8, 2003 and February 5, 2003, Dr. Davis made progress reports recommending Plaintiff's return to limited work with sedentary duties for 4 hours a day, 5 days per week. (AR 184, 189.) On February 18, 2003, Dr. Davis' operative report noted that injections were performed on Plaintiff's zygapophyseal joints. (AR 185.) Another report dated March 10, 2003 indicated some improvement with the injections. (AR 190.) However, a report dated April 2, 2003 indicated that Plaintiff "continues to be unable to return to usual work" and has "severe pain interfering with function." (AR 191.)

Dr. Davis issued several work slips to Plaintiff between June and July 2003. (AR 193-195.) In a progress report dated June 11, 2003, Dr. Davis recommended that Plaintiff remain off work until July 1, 2003. Id. Dr. Davis performed further injections on June 23, 2003. (AR 187.) Subsequently, in a July 9, 2003 progress report, Dr. Davis recommended sedentary work for a six week period. (AR 199.) Plaintiff was then referred to Dr. Finnesey when Dr. Davis' medical license was revoked. (AR 271, 202.)

### 3. Dr. Finnesey

Dr. Kevin S. Finnesey, M.D. first treated Plaintiff on September 2, 2003. (AR 95.) Dr. Finnesey considered Plaintiff "temporary totally disabled" as of January 26, 2004. (AR 97.) He recommended that Plaintiff remain off work for three months. (AR 98.) In a letter dated June 9, 2004, Dr. Finnesey concluded that Plaintiff was not a surgical candidate. (AR 95.) Furthermore, Dr. Finnesey indicated that Plaintiff should not lift more than 10 pounds and should not do repetitive bending, twisting, or siting for more than an hour at a time. (AR 96.) Dr. Finnesey allowed Plaintiff to work intermittently throughout 2004.

Dr. Finnesey made several requests for Plaintiff to consult with other physicians. A consultation by Dr. Yung Chen, M.D. on December 1, 2003 noted that Plaintiff said her pain intensity was 7 out of 10 and activities such as bending, sitting, standing, walking, and lying down aggravate her symptoms. (AR 129.) Dr. Chen confirmed that Plaintiff's "symptoms have been progressively getting worse since last year." Id. Dr. Chen concurred with Dr. Finnesey that Plaintiff is not suitable for surgery. (AR 130-131.) He offered further spine injections and narcotic

medication, but Plaintiff declined.  (AR 131.)

In connection with her claim for Worker's Compensation, Plaintiff was interviewed and examined by Dr. Peter J. Mandell, M.D., an orthopedic surgeon on May 10, 2004.  (AR 142, 153.) He reviewed all of Plaintiff's past medical records.  (AR 149-152.)  Dr. Mandell noted that Plaintiff developed symptomatic lumbar disc disease and a disc herniation at L5-S1.  (AR 147.)  He also noted that she has marked restrictions of lumbar motion in all planes and restrictions when raising straight-leg.  (AR 148.)  He recommended no heavy lifting, repetitive bending and stooping.  Id.  In Dr. Mandell's evaluation, he found Plaintiff to be permanently disabled, and her condition is unlikely to improve with active medical or surgical treatment.  (AR 153.)

### 4. Emergency Room Record

Plaintiff visited the emergency room for acute back pains on June 2, 2004.  (AR 118.)  On July 19, 2004, Plaintiff made a second emergency room visit due to her back pain.  (AR 207.)  A month later on August 14, 2004, Dr. Finnesey stated that Plaintiff "can work four-hours days with a ten-pound lifting restriction of no repetitive bending and twisting."  (AR 179.)

### 5. State Agency Physician Report

On June 23, 2004, Dr. Edward Gallagher, M.D., a non-examining, reviewing doctor who issued a Physical Residual Functional Capacity Assessment, concluded that Plaintiff can frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit about 6 hours with periodic changes of position, and push and pull without limitations.  (AR 100.)  Dr. Gallagher found Plaintiff able to occasionally climb, balance, stoop, kneel, crouch, and crawl.  (AR 101.)  He opined that Plaintiff's symptoms were attributable to a medically determinable impairment, but their severity was disproportionate to the expected severity of the impairment.  (AR 104.)  Dr. Gallagher thought that his findings were consistent with treating source conclusions in Plaintiff's medical file.  (AR 105.)

On August 31, 2004, Plaintiff was seen in a joint consultation with Dr. James Reynolds, M.D. and Dr. Brian Steinke, M.D.  (AR 132.)  The doctors reported "severe degenerative changes at L5-S1 with severe modic changes in the vertebral bodies adjacent to the L4-5 disc space.  There are also degenerative changes at L3-4 and L4-5."  (AR 137.)  They would not recommend any operative

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

treatment. Id. The doctors' diagnosis was consistent with Dr. Finnesey's. (AR 140.) They suggested left and right SI joint injections because they felt that the "SI joints are a fairly significant component of her pain." Id.

On September 1, 2004, Dr. Finnesey issued a work slip for Plaintiff to perform 4-hour workdays. (AR 209.) However, in a letter dated September 13, 2004, Dr. Finnesey acknowledged that Plaintiff complained about pain when working. (AR 211.) "She indicates she went to work for two hours and then had to leave due to pain." Id. The last record from Dr. Finnesey was a work slip dated December 16, 2004. (AR 204.) The slip indicated Plaintiff was released to return to work on February 1, 2005. Id.

From December 2004 to October 2005, there are no further records as to Plaintiff's medical condition. Based on the last record, Dr. Finnesey's work slip, the ALJ found that Plaintiff has regained ability to work as of February 1, 2005. (AR 16.) Up to this point, there is no disagreement between Plaintiff and Defendant on the issue of disability. The ALJ found, and Plaintiff conceded, that between August 2, 2002 and February 1, 2005, the Plaintiff "had the residual functional capacity to perform less than sedentary level work on a sustained basis and was unable to complete a full workday due to interference from pain." (AR 18-19.) However, Plaintiff disputes the ALJ's finding of improved RFC as of February 1, 2005. (Pl.'s Mot. 2:25-26.)

**6. Post-February 1, 2005 Medical Records**

The next record is a report from Plaintiff's emergency room visit on October 28, 2005 at El Camino Hospital. (AR 223.) The record described Plaintiff's complaint of moderate pain, her lack of medication because she was unable to see a doctor, and her ability to drive herself to the hospital. Id. The diagnosis was lumbar pain/spasm syndrome with radiculopathy to the left leg. (AR 224.) She was given pain relievers, Darvocet-N 100 and Soma, and advised to see a pain management doctor. Id.

**a. Dr. Brose**

Plaintiff was evaluated by Dr. William G. Brose, M.D., a specialist in anesthesiology and pain medication, on November 7, 2005. (AR 232.) Dr. Brose noted that Plaintiff's perception of pain at the time was 9 out of 10, with 10 representing the worst pain imaginable. (AR 238.) His

7

United States District Court
For the Northern District of California

1   diagnostic impression was chronic low back, left hip, and bilateral lower extremity pain, multilevel

2   lumbar degenerative disc disease, internal disc derangement by discography, and hypertension.  (AR

3   239.)  Dr. Brose reported that Plaintiff declined physical examination that day, so he was unable to

4   reach a "definitive opinion" on causes of her pain.  (AR 241.)  He recommended the HELP program,

5   an interdisciplinary pain rehabilitation program, to Plaintiff.  Id.

6          On November 17, 2005, Plaintiff continued her consultation with Dr. Brose, in which

7   Plaintiff participated in a physical examination.  (AR 243.)  Dr. Brose found tenderness at the

8   quadratus lumborum.  (AR 244.)  Plaintiff had limited thoracolumbar range of motion and reported

9   pain when attempting to perform an unlimited deep knee bend.  Id.  Dr. Brose's diagnostic

10  impression was chronic low back pain, multilevel lumbar degenerative disc disease, deconditioning,

11  and reactive paraspinous myofascial pain, quadratus lumborum bilaterally.  Id.  Dr. Brose opined

12  that Plaintiff had an incorrect understanding of her pain in that she associated increased pain with

13  ongoing actual or potential tissue damage.  (AR 245.)  Dr. Brose stated that despite his efforts to

14  explain, Plaintiff did not incorporate an alternative perspective on the causes of her increased pain.

15  Id.  Dr. Brose explained that Plaintiff may restore her functional activity if she tried pain-coping

16  strategies and increased her strength and endurance.  Id.  But he concluded that Plaintiff had "little

17  interest in pursuing the course of treatment that would be directly primary towards helping her

18  regain function, and instead may be interested in pursuing a course of treatment that would allow a

19  reduction in her activities and an overall reduction in her productivity to avoid any increased

20  experiences with persistent pain."  (AR 246.)  Thus, Dr. Brose concluded: "I see little else that I can

21  offer to her, recognizing that she is not interested in medication-related palliation and that this would

22  not be a recommended treatment strategy from my perspective."  Id.

23         The ALJ quoted directly from Dr. Brose's report to support her finding that Plaintiff was

24  not cooperative and "did not understand that pain associated with prescribed exercises was necessary

25  to achieve ultimate pain relief."  (AR 17.)

26         Plaintiff submitted a signed letter addressed to the ALJ dated April 24, 2006 to explain

27  why she initially refused physical examination with Dr. Brose and subsequently declined his

28  treatments.  (AR 250.)  She explained that she already experienced dissatisfaction with Dr. Brose's

1   office prior to the first consultation.  (AR 249.)  Due to misplacement of Plaintiff's approval letter,

2   Dr. Brose's office had to delay her appointment, which had taken three months to schedule.  Id.  In

3   the meantime, Plaintiff experienced a flare up in pain, and she made an emergency room visit on

4   October 26, 2005.  Id.  When Plaintiff finally met with Dr. Brose, Plaintiff stated that "I can say that

5   right away, I didn't feel comfortable."  Id.  She explained: "I had to refuse the physical because of

6   the flare-up, which landed me in the ER days prior."  Id.  On her second visit, "Dr. Brose had some

7   suggestions for me at that time, including multi-disciplinary physical therapy.  I was open to this at

8   the consultation but [was] also very uncomfortable with the surroundings."  Id.  Plaintiff was not

9   comfortable with Dr. Brose, so she decided to see another pain management physician.  Id.  She

10  obtained approval from State Farm in March of 2006 and consulted with Dr. Massey on April 17,

11  2006.  Id.  She was happy with Dr. Massey and agreed to start a multi-disciplinary regiment on May

12  17, 2006.  (AR 250.)

13                          **b.  Dr. Massey**

14          Dr. Massey's report was not in the record before the ALJ but was submitted to the Appeals

15  Council.  (AR 8.)  The Appeals Council acknowledged receipt of this report into evidence and

16  considered it in the decision to deny review of the ALJ's decision.  Id.

17          Plaintiff was examined by Dr. John E. Massey, M.D. on April 17, 2006.  (AR 249, 252,

18  254.)  Dr. Massey recorded Plaintiff's perception of pain as continuous and intense in various

19  locations.  Id.  Her perceived pain was 9 out of 10, with 10 being the strongest.  Id.  He reviewed

20  Plaintiff's available medical records, including the emergency room visit in October 2005 and Dr.

21  Brose's reports.  (AR 253.)  Dr. Massey noted that Plaintiff explained to him that she was not able to

22  accommodate the physical examination with Dr. Brose at the first consultation because of her recent

23  flare-up.  Id.  He further noted that Plaintiff was later examined by Dr. Brose on the second

24  consultation, and Dr. Brose recommended an interdisciplinary pain and rehabilitation program.  Id.

25          Dr. Massey provided the same impressions as Dr. Brose.  (AR 254.)  Dr. Massey confirmed

26  degenerative disc disease throughout Plaintiff's lumbar spine that was not amenable to surgery.  Id.

27  He opined that Plaintiff's physical condition slowly deteriorated to the point where Plaintiff had to

28  leave work completely in 2004.  Id.  Dr. Massey agreed with Dr. Brose that the best course of

1    therapy for Plaintiff is an interdisciplinary program.  (AR 255.)  He opined: "[t]he patient currently

2    is manifesting all of the typical physical and emotional sequelae of a chronic pain syndrome.

3    Without appropriate care, this is only going to get worse."  Id.  Lastly, Dr. Massey recommended

4    interdisciplinary evaluation under his care, and he renewed Plaintiff's Darvocet and Soma.  Id.

5                    **c.  Testifying Medical Expert: Dr. Van der Reis**

6              On October 11, 2005, Dr. Leo Van der Reis, M.D. was called to testify at the hearing

7    before the ALJ.  (AR 277.)  Based upon his review of the medical evidence and Plaintiff's

8    testimony, he opined that apart from degenerative disc disease, "[he] did not see any specific

9    diagnosis that would explain the low back pain."  (AR 279.)  He furthered stated: "[e]ven though

10   undeniably Ms. Snow has low back pain and has degenerative disc disease, there are no additional

11   findings that together meet or equal a listing."  Id. (see Section IV.A.1, infra at 11, for definition of

12   "listings").  Based solely on the MRI,  Dr. Van der Reis testified that he expects Plaintiff's ability to

13   be between light and sedentary.  (AR 280.)  He acknowledged that typically the condition of

14   degenerative disc disease gets worse over time.  Id.  However, he also acknowledged a possibility

15   that there is "no correlation between the MRI findings and the physical complaints."  Id.  Dr. Van

16   der Reis did not opine whether Plaintiff was or was not disabled.  (AR 277-82.)

17                   **d.  Testifying Vocational Expert: Mr. Malmuth**

18             The ALJ questioned Mr. Malmuth regarding the qualifications of a payroll clerk, which

19   was considered to be Plaintiff's past relevant work.  (AR 282.)  Under DOT 215.382-014, Mr.

20   Malmuth testified that the work of a payroll clerk has transferrable skills and is sedentary with an

21   SVP ("specific vocational preparation") level of 4 (semiskilled).  Id.  Mr. Malmuth testified that a

22   person who could not lift more than 10 pounds, would have to limit bending, twisting and stooping

23   to occasional times, and would need to change positions as needed for 10-15 minutes at a time,

24   would have an SVP of 4 and would be able to perform sedentary work such as data entry work.  (AR

25   285.)  The ALJ posed additional hypothetical situations, where a person with such residual

26   functional capacity might miss work one day a week and or would be able to work only twenty

27   hours per week.  The expert opined that in either case, the individual would not be employable full-

28   time.  Id.  Plaintiff's counsel pointed out that Social Security rulings presumed full-time work.  (AR

10

286.)

**IV.    DISCUSSION**

    **A.  The ALJ's Determination**

        **1.  The Five Step Process**

        The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). First, the SSA determines whether the claimant is engaged in substantial gainful activity.  See 20 C.F.R. § 404.1520(b).  If the claimant is not engaged in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a medically severe impairment or combination of impairments.  See 20 C.F.R. § 404.1520(c).  If the claimant has a severe impairment, the SSA proceeds to step three to "determine whether the impairment is equivalent to one of a number of listed impairments ("listings") that the Secretary acknowledges are so severe as to preclude substantial gainful activity."  Bowen, 482 U.S. at 141; see also 20 C.F.R. § 404.1520(d). The SSA presumes that a claimant is disabled if her impairment meets or equals one of the listings. Id.

        If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, which is then used to decide whether the claimant's impairment "prevents [her] from performing work [she] has performed in the past."  See 20 C.F.R. § 404.1520(e).  The SSA considers the claimant not disabled if she is able to perform her past work.  Id.  If the claimant cannot perform her past work, the SSA proceeds to step five to determine whether the claimant can perform other work in the national economy, considering her age, education, and work experience.  See 20 C.F.R. § 404.1520(f).  If the claimant cannot perform other work, the SSA finds her disabled.  See 20 C.F.R. § 404.1520(f)(1).

        **2.  Assessment of Subjective Complaints**

        An individual's statement regarding pain or other symptoms is not in itself conclusive evidence of a disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.  A claimant must produce "medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain."  Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).  Pain cannot be objectively

**United States District Court**
For the Northern District of California

1   measured.  However, "it is possible to suffer disabling pain even where the degree . . . as opposed to

2   the mere existence . . . is unsupported by objective medical findings."  Fair v. Bowen, 885 F.2d 597,

3   601 (9th Cir. 1989).  "Excess pain is, by definition, pain at a level above that supported by medical

4   findings . . . and the ALJ's assessment of the claimant's credibility becomes exceptionally

5   important."  Id. at 601-602.

6        The ALJ may not discredit the claimant's subjective complaints solely because the

7   objective medical evidence fails to fully corroborate the degree of pain alleged.  Fair, 885 F.2d at

8   601.  There must be "clear and convincing" reasons for discrediting the claimant's testimony, and

9   the adjudicator must identify the testimony that "is not credible and what evidence undermines the

10  claimant's complaints."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); see also Marcri v.

11  Chater, 93 F.3d 540, 544 (9th Cir. 1996) (quoting Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.

12  1989) (adjudicator may disbelieve claimant's excess pain testimony but must make a "specific and

13  justifiable finding' that the testimony is not credible").  For instance, the ALJ "may discredit the

14  claimant's pain allegations based on inconsistencies in the testimony or on relevant character

15  evidence" as long as there are "specific findings that are supported by the record."  Bunnell, 947

16  F.2d at 346.

17            **3.  The ALJ's Findings**

18        At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

19  her alleged injury on August 2, 2002, although Plaintiff has made a few unsuccessful attempts to

20  return to work.  (AR 15.)  At step two, the ALJ found from the medical evidence that Plaintiff

21  suffered from severe lumbar disc disease with spasms of the lower back.  (AR 18.)  At step three, the

22  ALJ found that Plaintiff did not have an impairment of a level of severity listed in or medically equal

23  to one listed in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.  (AR

24  18.)  Dr. Van der Reis testified to the same at the hearing.  (AR 279.)  Since Plaintiff's impairment

25  failed to meet one of the listings, the ALJ turned to determination of Plaintiff's RFC.  (AR 17.)

26        At step four, the ALJ found Plaintiff to be precluded from sedentary level work from

27  August 2, 2002 to February 1, 2005.  (AR 17.)  In that period, Plaintiff "had the RFC to perform less

28  than sedentary level work on a sustained basis and was unable to complete a full workday due to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    interference from pain." (AR 18-19.)  Accordingly, Plaintiff was disabled within the closed period.

2            In the absence of medical documentation of a continuing disability, the ALJ found

3    Plaintiff's RFC and condition improved after February 1, 2005. (AR 18.)  The ALJ found Plaintiff

4    to have significantly improved to attain capacity, "despite continuing, but less than fully credible,

5    subjective complaints, that is related to the ability to work and that is sufficient to permit [Plaintiff

6    to] work at the sedentary level involving lifting/carrying of up to 10 pounds with no repetitive

7    bending and twisting and permitting standing at will for 10-15 minutes after sitting for an hour on an

8    as needed basis." Id.  The ALJ opined that substantial evidence supported Plaintiff's ability to work

9    at sedentary level as of February 1, 2005. (AR 17.)  She first pointed to Plaintiff's release to work

10   by Dr. Finnesey on February 1, 2005. (AR 17.)  The ALJ found Plaintiff to be less than credible

11   because Plaintiff's claimed subjective level of pain is inconsistent with her daily activities of

12   household chores, such as vacuuming, laundry, grocery shopping, walking her dog for 10 minutes,

13   and walking without an assistive device. (AR 17.)  The ALJ cited Dr. Van der Reis' testimony,

14   which indicated that the medical records cannot account for the high level of Plaintiff's subjective

15   pain complaints. (AR 18.)   The ALJ also noted Plaintiff's initial refusal of Dr. Brose's examination

16   and her lack of interest in Dr. Brose's prescribed exercises for pain as contributing factors to finding

17   that Plaintiff was not credible. Id.  Finally, the ALJ noted that Plaintiff failed to seek any kind of

18   treatment for pain except one emergency room visit between February 1, 2005 and her visit to Dr.

19   Brose in November 2005. Id.  From all the evidence, the ALJ concluded that Plaintiff regained an

20   RFC of sedentary and was able to return to work. Id.

21           At step five, the ALJ found Plaintiff sufficiently able to return to past vocationally relevant

22   work as a payroll clerk. (AR 18.)  The ALJ cited corroborating testimony by the vocational expert

23   that someone of Plaintiff's RFC was able to work as a data entry clerk. (AR 285.)   Since the skills

24   and RFC of both positions are similar, the ALJ found Plaintiff to be able to perform the work of a

25   payroll clerk as well as data entry.  The ALJ concluded in her decision that Plaintiff was no longer

26   disabled beyond February 1, 2005 and not eligible to receive disability benefits thereafter. (AR 19.)

27       **B.  Review of the ALJ's Findings**

28           **1.  There is Substantial Evidence to Support a Finding of Improvement.**

13

United States District Court
For the Northern District of California

Plaintiff disputes the finding that she regained an RFC of sedentary and can return to past relevant work as unsupported by substantial evidence.  She argues that there is no objective medical evidence showing improvement of Plaintiff's condition.  Plaintiff argues that the ALJ's finding of disability in the closed period of August 2002 to February 2005 created a presumption of ongoing disability, requiring the ALJ to point to evidence of improvement before finding Plaintiff no longer disabled beyond the closed period, relying on Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983).  Murray, however, required a showing of medical improvement giving rise to a presumption of continued disability, which the SSA failed to rebut with evidence of improvement in a subsequent decision.  See Patti v. Schweiker, 669 F.2d 582, 583 (9th Cir. 1982) (the plaintiff was found disabled and was receiving supplemental security disability benefits, so a finding that the plaintiff was no longer disabled in a subsequent renewal decision required evidence of medical improvement).  Here, by contrast, Plaintiff was a first time applicant for disability benefits who had not previously been found disabled and awarded disability benefits.  (AR 50.)  The ALJ reviewed Plaintiff's application in its entirety to decide the issue of disability, in the absence of any previous determinations that Plaintiff was disabled.  Thus, the applicable standard is whether the ALJ's decision is supported with substantial evidence.

In any case, the ALJ relied on Dr. Finnesey's work slip that released Plaintiff to work on February 1, 2005 as evidence that Plaintiff's medical condition improved.  (AR 209.)  Dr. Finnesey was Plaintiff's treating physician at the time.  Thus, his opinion should be given significant weight.  See Murray, 722 F.2d at 501.

Plaintiff counters that Dr. Finnesey's work slip does not amount to substantial evidence.  (Pl.'s Mot. 9:11-12.)  She contends that Dr. Finnesey issued the slip in anticipation that Plaintiff would seek a pain management physician.  (Pl.'s Mot. 9:19-21.)  Furthermore, Plaintiff argues that a "check-off mark on a form" is not substantial evidence, citing Murray, 722 F.2d at 501.  However, Murray held that diagnosis from a non-treating physician's check-off form was not substantial evidence when the form's opinion is contradicted by detailed opinions from treating physicians.  Murray, 722 F.2d at 501.  Here, by contrast, the work slip was issued by the treating physician.  Thus, it is entitled to more weight than a check-off form by a non-treating physician as in Murray.

14

**United States District Court**
For the Northern District of California

1    Plaintiff fails to provide any contrary medical evidence reflecting her condition as of February 1,

2    2005 to rebut the work slip.

3            Instead, the next medical record is the October 2005 emergency room visit, eight months

4    later.  An emergency room visit by itself does not show continuing or permanent disability, as

5    opposed to a temporary flare up.  (AR 249.)  The emergency record fails to show continuing

6    disability from February to October 2005.

7            Plaintiff contends that there is substantial evidence that she sought treatment for her pain,

8    such as visiting the emergency room a second time in March 2006 in addition to her October 2005

9    visit.  The report of the second visit was not in the record before the ALJ, but was submitted to the

10   Appeals Council.  Defendant points out, however, that the ALJ specifically found Plaintiff's

11   "objective physical abnormalities were insufficient to account for the subjective complaints" during

12   the visit in October 2005.  (AR 17.)  Defendant also notes that Plaintiff's ability to drive herself to

13   the emergency room is inconsistent with complaints of disabling back pain.  Thus, Defendant

14   contends that failure to seek regular treatment for reasons which the ALJ discredited as not

15   believable, as well as allegations of pain the ALJ properly determined were not credible, support

16   denial of disability.  Fair, 885 F.2d at 603-04.

17           The ALJ gave clear and convincing reasons for finding Plaintiff not credible regarding her

18   subjective complaints of pain and identified the testimony that was not credible and the evidence

19   that undermined her complaints.  (AR 17.)  See Lester v. Chater, 81 F.3d at 834.  She pointed to

20   Plaintiff's testimony of daily activities as being inconsistent with Plaintiff's attested level of

21   disabling pain.  (AR 17.)  "In weighing a claimant's credibility, the ALJ may consider his reputation

22   for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

23   daily activities, his work record, and testimony from physicians and third parties concerning the

24   nature, severity, and effect of the symptoms of which he complains."  Light, 119 F.3d at 792 (citing

25   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)).  The ALJ reasonably relied on the

26   inconsistencies in Plaintiff's testimony, Dr. Van der Reis' opinion, and Dr. Brose's report after

27   examining Plaintiff, noting that Plaintiff refused treatments that could alleviate her pain and showed

28   "little interest in pursuing the course of treatment that would be directly primary towards helping her

United States District Court
For the Northern District of California

1   regain function, and instead may be interested in pursuing a course of treatment that would allow a

2   reduction in her activities and an overall reduction in her productivity to avoid any increased

3   experiences with persistent pain." (AR 246.) The ALJ also relied on Dr. Finnesey's release of

4   Plaintiff to work, and Plaintiff's failure to seek medical treatment between February 2005 and

5   October 2005.

6          Plaintiff also disputes the ALJ's reliance on Plaintiff's past relevant work as a payroll

7   clerk, as well as data entry, contending that the vocational expert never testified that Plaintiff could

8   perform her past work as a payroll clerk, and that her job as a payroll assistant ended more than

9   fifteen years before the date the SSA adjudicated her claim. First, the vocational expert opined that a

10  person of Plaintiff's RFC would be able to perform data entry, the same duties that Plaintiff

11  performed in her former job as a payroll clerk. (AR 273.) Second, although the relevant regulation

12  usually limits past relevant work consideration to a fifteen year time period, the ALJ is not precluded

13  from considering past work beyond fifteen years, particularly here where the past relevant work was

14  performed at most only slightly more than fifteen years before the ALJ decided Plaintiff's benefits

15  claim. See 20 C.F.R. § 404.1565(a) ("We do not usually consider that work you did 15 years or

16  more before the time we are deciding whether you are disabled.") (emphasis added).

17         The regulation establishing the fifteen year guideline explains its purpose as follows: "A

18  gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills

19  and abilities acquired in a job done then continue to apply. The 15-year guide is intended to insure

20  that remote work experience is not currently applied." Id. That regulation provides guidelines for

21  vocational considerations, but does not mandate a strict cutoff precluding the ALJ from considering

22  past relevant work. See Social Security Ruling 82-62 ("While the regulations provide that a

23  claimant/beneficiary's work experience is usually relevant when the work 'was done within the last

24  15 years,' in some cases worked performed prior to the 15-year period may be considered as relevant

25  when a continuity of skills, knowledge, and processes can be established between such work and the

26  individual's more recent occupations.") "It is therefore clear that the fifteen-year cut-off is not a

27  fixed rule of law, but rather a guideline, the application of which is governed by the facts and

28  circumstances particular to each case." See Khuu v. Chater, 12 F.Supp.2d 1028, 1031 (C.D.Cal.

1   1997) (citing Smith v. Secretary of Health and Human Services, 893 F.2d 106, 109 (6th Cir.1989),

2   aff'd by Khuu v. Apfel, 168 F.3d 499 (9th Cir. 1999).

3          Here, Plaintiff testified that she stopped working as a payroll assistant sometime in the

4   early '90s or in 1990, but gave no definitive date.  (AR 263.)  As the ALJ held the hearing on

5   Plaintiff's claim on October 11, 2005 and issued her decision on April 7, 2006, the ALJ relied on

6   past work that Plaintiff performed at most about sixteen years earlier.  The additional year is not

7   such a substantial departure from the fifteen year guideline that would amount to legal error so as to

8   warrant remand, especially under the circumstances here: the ALJ concluded that the data entry

9   skills Plaintiff acquired as a payroll clerk continue to be marketable; Plaintiff testified that her job as

10  a payroll clerk basically involved computer data entry (AR 273); and the ALJ found that Plaintiff's

11  past vocationally relevant work as a payroll clerk had an SVP of 4 and involved transferrable skills.

12  (AR 15.)  Although computer technology has changed in the last sixteen years, the marketable skills

13  required for data entry, as opposed to computer programming, for example, have not changed greatly

14  in that time.  The ALJ thus did not err by relying on Plaintiff's past work as a payroll assistant which

15  may have been about sixteen, rather than fifteen, years before deciding Plaintiff's claim.  In light of

16  the evidence that was before the ALJ when she made her decision, this Court concludes that the

17  ALJ's decision was supported by substantial evidence and applied the proper legal standards.

18

19          **2.  Dr. Massey's Report and the Second Emergency Room Visit Do Not
               Require Remand**.

20         Plaintiff also contends that the Appeals Council committed legal error by failing to provide

21  reasons for rejecting the opinion of consulting physician Dr. Massey, and seeks remand on the basis

22  of his report in which he opined that "[w]ithout appropriate care, this is only going to get worse,"

23  (AR 255), which was not before the ALJ.  Dr. Massey agreed with Dr. Brose in that Plaintiff's best

24  course of therapy would be an interdisciplinary program.  (AR 255.)   In addition, Dr. Massey

25  opined that "[t]he patient currently is manifesting all of the typical physical and emotion sequelae of

26  a chronic pain syndrome."  (AR 255.)  However, he did not opine that Plaintiff was disabled or that

27  her condition had worsened; he only reported that she stopped working as of 2004.  Id.

28         For the report to serve as the basis for remand, Plaintiff must demonstrate that the evidence is

1   material and that good cause exists for her failure to present it in a prior proceeding.  See 42 U.S.C.

2   § 405(g); Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).  In Mayes, the plaintiff submitted

3   new evidence to the Appeals Council, as Plaintiff did here.  Id. at 458.  The Appeals Council noted

4   that "the 'additional evidence' . . . was not relevant to whether [plaintiff] has been disabled before

5   the ALJ issued his decision. . . ."  Id.  The Ninth Circuit affirmed the district court's ruling denying

6   remand based on that new evidence, requiring the plaintiff to show that the new evidence was

7   material to determining her disability, and that she had good cause for having failed to produce that

8   evidence earlier.  Id. at 462.  "To be material under section 405(g), the new evidence must bear

9   'directly and substantially on the matter in dispute.'  [The plaintiff] must additionally demonstrate

10  that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the

11  administrative hearing."  Id. (citations omitted).

12          Dr. Massey's report does show that Plaintiff sought from Dr. Massey the same type of

13  treatment recommended by Dr. Brose that she had previously refused.  However, Dr. Massey's

14  report offers little of significance in terms of medical diagnosis.  Dr. Massey generally agreed with

15  Dr. Brose.  (AR 255.)  Plaintiff has not shown a reasonable possibility that Dr. Massey's report

16  would alter the outcome of Plaintiff's disability claim, because it does not show a disabling medical

17  condition after February 2005 or any significant deviation from Dr. Brose's diagnosis, which the

18  ALJ did consider.  Rather, Dr. Massey's report is largely cumulative.  Furthermore, the Appeals

19  Council stated in its decision that it considered Dr. Massey's report in affirming the ALJ's findings.

20  (AR 5-6.)   Because Dr. Massey's report is not material, the Court need not reach the issue of good

21  cause for the delay in submitting the report.

22          Plaintiff also requests remand based on the second emergency room record, dated March

23  17, 2006, which was not submitted to the ALJ because it post-dated the hearing.  (AR 251.)  This

24  document only stated: "muscle strain, lumbar paraspinus."  Id.  At most, this report indicates a flare

25  up of pain, and does not justify remand.

26  **V.      CONCLUSION**

27          For the reasons stated above, Plaintiff's motion for summary judgment or remand is

28  DENIED.   Defendant's cross-motion for summary judgment is GRANTED.

18

This Order terminates Docket Nos. 9 and 10.

**IT IS SO ORDERED.**

Dated: June 7,  2007

_Elizabeth D. Laporte_
_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

19